[971 NYS2d 504]

KEREN ELMALIACH, Individually and as Statutory Representative of the Estate of EMI ELMALIACH, Deceased, et al., Respondents-Appellants, v BANK OF CHINA LIMITED, Appellant-Respondent.

First Department, September 17, 2013

**APPEARANCES OF COUNSEL**

*Patton Boggs LLP*, New York City (*Mitchell R. Berger, Daniel R. Murdock* and *James E. Tyrrell, Jr.* of counsel), for appellant-respondent.

*The Berkman Law Office, LLC*, Brooklyn (*Robert J. Tolchin* and *Meir Katz*, of the bar of the State of Maryland and District of Columbia, admitted pro hac vice, of counsel), for respondents-appellants.

## OPINION OF THE COURT

FEINMAN, J.

Plaintiffs are 50 citizens and domiciliaries of Israel who were either injured in terrorist bombings and rocket attacks carried out by Palestine Islamic Jihad (PIJ) and Hamas in Israel between 2005 and 2007, or are family members or estates of persons killed in the attacks.[1] They allege that the acts of Bank of China Limited (BOC) were a proximate cause of their injuries in that BOC helped facilitate the transfer of millions of dollars between PIJ and Hamas leadership outside Israel and their operatives inside Israel, enabling the two organizations to plan, prepare, and undertake acts of terrorism in Israel. Defendant moved to dismiss on the alternative grounds of failure to state a claim (CPLR 3211 [a] [7]) and forum non conveniens (CPLR 327 [a]). The parties disagreed as to whether the motion court should apply the substantive law of New York or Israel. The Supreme Court denied the motion, and implicitly applied New York substantive law. Defendant appeals from the denial of the motion to dismiss, and plaintiffs cross-appeal to the extent the motion court implicitly determined that their claims are governed by New York substantive law. We affirm the Supreme Court's order although we arrive at the same conclusion by a different analysis, and determine that Israeli law should govern.

According to the pleadings,[2] the United States has designated both PIJ and Hamas as Foreign Terrorist Organizations since 1997 and as Specially Designated Global Terrorists since 2001. The United States has imposed worldwide economic sanctions intended to prevent the two organizations from conducting banking activities that would help finance their attacks. BOC is allegedly one of a few banks worldwide that does not enforce the U.S. sanctions. Between 2003 and 2007, dozens of wire transfers initiated by Hamas and PIJ leadership located outside Israel were executed through the New York-based branches of BOC and deposited into two BOC accounts in China. These two accounts were allegedly owned by a senior operative of both terrorist organizations named Said al-Shurafa; he allegedly

---

1. The bomb attacks allegedly occurred in Sderot, Israel on January 15, 2005, November 16, 2006, and December 26, 2006; in Tel Aviv, Israel on April 17, 2006; in Shaar HaNegev, Israel on November 21, 2006; and in Eilat, Israel on January 29, 2007.

2. This litigation consists of two actions, *Elmaliach et al. v Bank of China Ltd.* and *Zamalloa et al. v Bank of China Ltd.*, which the Supreme Court consolidated under the *Elmaliach* index number. Unless otherwise specified, references to the pleadings means the allegations of both complaints.

transferred the dollars to PIJ and Hamas leadership inside Israel for the purpose of planning, preparing, and executing terrorist attacks within Israel, including those at issue here.

BOC allegedly had actual knowledge since about April 2005 that the wire transfers were being used to facilitate terrorist attacks. According to the pleadings, officials from the Israeli Prime Minister's office met with officials from the Chinese Ministry of Public Security and the People's Republic of China's (PRC) central bank in April 2005 to warn the Chinese officials that the wire transfers were being made by the PIJ and Hamas for the purpose of carrying out terrorist attacks. The Israeli officials demanded that the PRC officials take action to stop BOC from facilitating further transfers. The PRC officials allegedly communicated this information to BOC in April 2005, including the demand by Israeli officials that BOC stop the wire transfers in an effort to thwart terrorist funding. BOC continued to carry out these wire transfers at least through January 2007.

The first cause of action alleges negligence under sections 35 and 36 of Israel's Civil Wrongs Ordinance (CWO). The second cause of action alleges breach of statutory duty under section 63 of Israel's CWO, which provides a civil remedy for breaches of obligations including those under section 4 of Israel's Prevention of Terrorism Ordinance, sections 145 and 148 of Israel's Penal Law, and section 85 of Israel's Defense Regulations (Emergency Period), all prohibiting the provision of material support or services to terrorist organizations.

BOC moved pre-answer to dismiss the complaint for failure to state a cause of action (CPLR 3211 [a] [7]), and alternatively, based on the doctrine of forum non conveniens (CPLR 327 [a]). It argued, in sum, that the elements of a claim of negligence are the same in both New York and Israeli law, and in New York, a bank does not owe a duty to protect non-customers from the intentional torts of its customers, nor does it proximately cause injury by providing conventional banking services to a person allegedly affiliated with an entity that ultimately commits an intentional tort. BOC also argued that New York is not a proper forum in that the action may likely involve the application of Chinese law, the parties are all foreign, the majority of relevant evidence is in China, and China has a substantial interest in adjudicating the action because the alleged conduct primarily took place in China.

BOC's motion was denied in its entirety in a considered decision discussing at length several federal cases raising similar is-

sues (2011 NY Slip Op 33703[U] [2011]). In particular, the motion court's reasoning was based, in part, on then-recent holdings in two federal district court lawsuits brought by plaintiffs' counsel on behalf of other victims of terrorist attacks in Israel against banks allegedly used on behalf of terrorist groups: *Licci v American Express Bank Ltd.* (704 F Supp 2d 403 [SD NY 2010] [*Licci I*]) and *Wultz v Islamic Republic of Iran* (755 F Supp 2d 1 [D DC 2010] [*Wultz I*]). In both actions, the complaints contained causes of action brought under American and Israeli law; the federal district courts examined whether there were actual conflicts in the laws at issue, which jurisdiction's law was to be applied, and whether the complaints stated a cause of action under the relevant law.

*Licci I* was brought on behalf of several Israeli residents injured or killed in Israel. It alleged that American Express Bank failed to comply with banking regulations and laws including monitoring, reporting, and refusing to execute suspicious or irregular banking transactions when it acted as a correspondent bank for the Lebanese Canadian Bank. The bank allegedly executed dozens of wire transfers in U.S. dollars for accounts on behalf of the Shahid Foundation, which facilitated funds reaching Hizbollah members and enabling Hizbollah to carry out terrorist attacks in Israel, including the ones that harmed those plaintiffs (*Licci I*, 704 F Supp 2d at 405). The federal district court in *Licci I* found no "appreciable material difference" between the relevant laws of Israel and New York (*id.* at 410). Applying New York law, *Licci I* found no showing that the bank owed a duty of care to the plaintiffs or, if there was a duty, that its breach was a substantial cause of the events that resulted in the plaintiffs' injuries (*id.*). In particular, the complaint did not include allegations that would tend to show that the bank had any ties to Hizbollah, or that it knew or had reason to believe that the monies at issue would be used to carry out terrorist attacks on civilian targets (*id.*). The allegations insufficiently showed that it was foreseeable that the bank's "routine banking services" would result in terrorist attacks (*id.*). The district court dismissed the complaint in *Licci I* for failure to state a cause of action.

*Wultz I* was brought on behalf of an American father who was injured and his son who was killed in a suicide bombing in Tel Aviv, and their family. The complaint alleged in part that the defendant bank—also BOC—had actual knowledge that dozens of wire transfers were initiated by the PIJ in Middle Eastern

countries outside of Israel, executed by BOC branches in the United States and then transferred into accounts of officers and agents of the PIJ, and used to plan and execute acts of terrorism.[3] The district court found that under Israeli law, these allegations were sufficient to deny the bank's motion to dismiss as the bank could have reasonably anticipated the plaintiffs' resulting injuries (*Wultz I* at 60). Reargument was granted on the issue of jurisdiction. The district court reaffirmed its previous holding as to the sufficiency of the claims against BOC, but severed those claims and, upon the plaintiffs' request, ordered them transferred to the Federal District Court of the Southern District of New York (*Wultz v Islamic Republic of Iran*, 762 F Supp 2d 18 [D DC 2011] [*Wultz II*]). Upon reassignment, the Southern District judge declined to readdress the question of legal sufficiency, but directed the parties to brief the choice of law issue (*see Wultz v Bank of China Ltd.*, 811 F Supp 2d 841, 845 [SD NY 2011] [*Wultz III*]).

In addressing BOC's motion to dismiss in the case at bar, the motion court held that, as in *Wultz*, the "unique factual allegations" regarding BOC's knowledge of its customer's terrorist activities, "takes [the claim] outside the usual rule that '[b]anks do not owe non-customers a duty to protect them from the intentional torts committed by their customers' " (2011 NY Slip Op 33703[U], *12). It also rejected BOC's arguments that New York was an inconvenient forum because, among other reasons, BOC is currently undertaking discovery in the *Wultz* matter in the Southern District of New York.

On appeal, BOC contends that while the motion court was correct to de facto apply New York law, it erred in finding that plaintiffs had sufficiently pleaded that it breached a duty of care to them, as required under New York's negligence principles. It cites several state and federal decisions that hold, as summarized by *Lerner v Fleet Bank, N.A.*, that "[a]s a general matter, [b]anks do not owe non-customers a duty to protect them from the intentional torts of their customers" (459 F3d 273, 286 [2d Cir 2006] [internal quotation marks omitted]; *see also Century Bus. Credit Corp. v North Fork Bank*, 246 AD2d 395, 396 [1st Dept 1998]). BOC argues that the motion court failed to analyze whether it owed plaintiffs a duty of care, and instead concluded that a claim of negligence had been sufficiently alleged because

---

**3.** *Wultz I* alleged breaches of the Federal Antiterrorism Act (18 USC § 2331 *et seq.*) and negligence and breach of statutory duty under Israeli law.

BOC allegedly knew of its customer's wrongdoings and it was foreseeable that injury might occur.

BOC also argues that if there exists a conflict in the law, New York or Chinese law should govern as both jurisdictions have a greater interest in their banks' conduct than does Israel. Additionally, it argues that the breach of the Israeli statutory duty was improperly pleaded, and that the complaint should have been dismissed on forum non conveniens grounds because neither New York nor Israel has a sufficient nexus with the litigation, while China does, and provides an adequate alternative forum.

At the outset, we note that since plaintiffs are not aggrieved by the denial of defendant's motion to dismiss, their appeal must be dismissed (*see Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539, 544-545 [1983]; CPLR 5511).

Plaintiffs argue that Israeli law should govern, not Chinese law, and argue in the alternative that their claim is sufficient under New York negligence law.[4] They contend that they properly pleaded the elements of the Israeli statute allegedly violated by BOC and that the statute has no equivalent in New York law. They further argue that New York is a suitable forum because at least some of the wire transfers were allegedly executed through BOC's New York branches.

On a motion to dismiss pursuant to CPLR 3211 (a) (7), the court accepts as true the facts as alleged in the complaint and affidavits in opposition to the motion, accords the plaintiff the benefit of every possible favorable inference, and determines only whether the facts as alleged manifest any cognizable legal theory (*Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 414 [2001]; *Richbell Info. Servs. v Jupiter Partners*, 309 AD2d 288, 289 [1st Dept 2003]).

To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate that the defendant owed him or her a duty of reasonable care, a breach of that duty, and a resulting injury proximately caused by the breach (*see Boltax v Joy Day Camp*, 67 NY2d 617 [1986]; *Hyatt v Metro-North Commuter R.R.*, 16 AD3d 218, 218 [1st Dept 2005] ["traditional common-law elements of negligence: duty, breach, damages, causation and foreseeability"]). The threshold question in tort

---

4. Although plaintiffs have no right to appeal, they may nevertheless raise this issue for our review on defendant's appeal (*see Parochial Bus Sys.*, 60 NY2d at 545-546; *Kraham v Mathews*, 305 AD2d 746, 746-747 [3d Dept 2003], *lv denied* 100 NY2d 512 [2003]).

cases is whether the alleged tortfeasor owed a duty of care to the injured party (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]; *see Asante v JPMorgan Chase & Co.*, 93 AD3d 429, 430 [1st Dept 2012], *lv denied* 19 NY3d 813 [2012]). The scope of any such duty of care varies with the foreseeability of the possible harm and takes into consideration the reasonable expectations of the parties and society in general (*Tagle v Jakob*, 97 NY2d 165, 168 [2001]; *see Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 344 [1928]). Although foreseeability has been called "a critical factor" in defining an alleged tortfeasor's duty, it will not create a duty which does not otherwise exist (*Blye v Manhattan & Bronx Surface Tr. Operating Auth.*, 124 AD2d 106, 109 [1st Dept 1987], *affd* 72 NY2d 888 [1988], citing *Pulka v Edelman*, 40 NY2d 781, 785 [1976]). In order to demonstrate this threshold element, the injured party must show not only that the defendant owed a general duty to society but a specific duty to the plaintiff; without a duty running directly to the injured person there is no liability in damages, however foreseeable the harm (*Lauer v City of New York*, 95 NY2d 95, 100 [2000]).

██ Because the parties disagree as to which jurisdiction's law should apply to the negligence claim, the court is required first, using New York conflict of laws principles, to determine whether there is an actual conflict (*Matter of Allstate Ins. Co. [Stolarz— New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219, 223 [1993]; *see Mann v Cooper Tire Co.*, 306 AD2d 23 [1st Dept 2003]).[5] To find that there is an "actual conflict," the laws in question must provide different substantive rules in each jurisdiction that are "relevant" to the issue at hand and have a "significant *possible* effect on the outcome of the trial" (*Finance One Pub. Co. Ltd. v Lehman Bros. Special Fin., Inc.*, 414 F3d 325, 331 [2d Cir 2005], *cert denied* 548 US 904 [2006] [citations omitted]; *see e.g. Caribbean Constr. Servs. & Assoc. v Zurich Ins. Co.*, 267 AD2d 81, 82-83 [1st Dept 1999] [choice of law analysis required where the claim of bad faith differed between New York and Virgin Islands law; Virgin Islands law did not require a showing that the egregious conduct was "aimed at the public generally," in order to seek punitive damages]; *compare Tronlone v Lac d'Amiante Du Quebec*, 297 AD2d 528 [1st Dept 2002], *affd* 99 NY2d 647 [2003] [no choice of law analysis required where there was no relevant conflict between New York and New Jersey law with

---

**5.** The motion court should have explicitly conducted a choice of law analysis (*see Padula v Lilarn Props. Corp.*, 84 NY2d 519, 521 [1994]; *Schultz v Boy Scouts of Am.*, 65 NY2d 189, 196, 197 [1985]).

respect to the sufficiency of a plaintiff's showing of product identification and exposure in an asbestos case]).

As discussed most fully in *Wultz I*, the Israeli law of negligence "differs slightly" from New York law in that duty is divided into fact and notional duty and depends on foreseeability (755 F Supp 2d at 58). Under Israel's CWO, the analysis of whether a duty is owed involves an inquiry into whether a reasonable person could have foreseen the occurrence of the damage under the particular circumstances alleged; whether as a matter of policy, a reasonable person ought to have foreseen the occurrence of the particular damage; and whether the occurrence causing the damage was foreseeable (*id.* at 58-59). This differs from New York law, where the foreseeability of harm does not define duty and, absent a duty running directly to the injured person, there is no liability in damages, however careless the conduct or foreseeable the harm (*see 532 Madison Ave. Gourmet Foods v Finlandia Ctr.*, 96 NY2d 280, 289 [2001]).

In addition, the claim of breach of statutory duty, section 63 of Israel's CWO, has no equivalent in New York law. As summarized in *Wultz I* (755 F Supp 2d at 67), Israel's tort of breach of a statutory duty "acts as a civil private right of action for the violation [of] any enactment" issued by the Knesset, the Israeli parliament. The plaintiff must be able to show that the defendant was under a duty imposed by an enactment, the enactment was created for the benefit of the plaintiff, the defendant breached that duty, and the breach caused an injury to the plaintiff of the type that the enactment was intended to prevent (*id.*; *see also Licci v Lebanese Can. Bank, SAL*, 20 NY3d 327, 331 n 5 [2012]). As stated above, the enactments at issue are section 4 of the Prevention of Terrorism Ordinance, sections 145 and 148 of the Penal Law, and section 85 of the Defense Regulations (Emergency Period), all of which prohibit aiding and abetting terrorism, specifically by the giving of money to any terrorist organization, the payment of any contribution to any unlawful association including terrorist groups, and the performance of any service for or holding of funds of any unlawful organization (*see discussion in Wultz I*, 755 F Supp 2d at 67-76).

We agree with the district court's analysis in *Wultz I* and conclude that the differences between the New York and Israeli laws of negligence could affect the trial's outcome, perhaps significantly. It is therefore necessary to undertake an interest analysis to identify the jurisdiction with the greatest interest in

the litigation (*see Schultz v Boy Scouts*, 65 NY2d at 197). We also find that the Israeli tort of a violation of statutory duty is "unique" to Israel, and also requires a choice of law analysis (*see Wultz III*, 811 F Supp 2d at 850).

"In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation" (*Padula v Lilarn Props. Corp.*, 84 NY2d at 521). New York aims to give " 'controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation' " (*Cooney v Osgood Mach.*, 81 NY2d 66, 72 [1993], quoting *Babcock v Jackson*, 12 NY2d 473, 481 [1963]).

The interest analysis addresses two inquiries: "(1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law [at issue] is to regulate conduct or allocate loss" (*Padula v Lilarn Props. Corp.*, 84 NY2d at 521). A state's interest is defined solely based on the facts or contacts "which relate to the purpose of the particular law in conflict" (*Schultz v Boy Scouts*, 65 NY2d at 197). The significant contacts in such an analysis are, "almost exclusively, the parties' domiciles and the locus of the tort" (*id.*).

A distinction is made, when analyzing choice of law, between laws the purpose of which is to regulate conduct and those which allocate loss. The duty of care owed by a bank to third parties is a conduct-regulating rule (*see Licci ex rel. Licci v Lebanese Can. Bank, SAL*, 672 F3d 155, 158 [2d Cir 2012] [*Licci II*]; *Wultz v Bank of China Ltd.*, 865 F Supp 2d 425, 426-427 [SD NY 2012] [*Wultz IV*]).[6] It has long been held that when the conflict pertains to a conduct-regulating rule, the law of the place where the tort occurs will generally apply, with the locus of the tort generally defined as the place of the injury (*see Devore v Pfizer Inc.*, 58 AD3d 138, 141 [1st Dept 2008], *lv denied* 12 NY3d 703 [2009], citing *Schultz v Boy Scouts* at 198). This is because the jurisdiction where the tort occurred, the lex loci delicti, will almost always have the greatest interest in regulating conduct within its borders (*see Padula v Lilarn Props. Corp.*, 84 NY2d at

---

**6.** Plaintiffs make the intriguing but unpersuasive argument that if, as BOC argues, banks are entirely immune from liability to non-customers, then the purpose of any law addressing a bank's duty of care to third parties would not be to regulate conduct, but to provide a post-event remedial rule designed to determine cost allocation.

522; *Schultz v Boy Scouts*, 65 NY2d at 198). Where a defendant's negligent conduct occurs in one jurisdiction and the plaintiff suffers injuries in another, "the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred," that is, "where the plaintiffs' injuries occurred" (*Schultz v Boy Scouts* at 195; *see Devore*, 58 AD3d at 141).

■ In this case, the three jurisdictions with significant contacts are New York, Israel, and China. New York has a very strong interest as a world financial center in overseeing financial institutions operating in the United States. In addition, having been the target of several terrorist attacks, New York has a great interest in combating terrorism, including its financial aspects. Israel is the domicile of plaintiffs as well as the location where they were injured or killed. Israel has a very strong interest in protecting its citizens and residents, who were the intended targets of the terrorist attacks inside Israeli territory (*see Wultz III*, 811 F Supp 2d at 847-848, 852). Defendant BOC is domiciled in China; its transactions occurred in New York and China. China has a great interest in overseeing its financial institutions.

The parties direct this Court's attention to subsequent federal court decisions in both *Wultz* and *Licci* which they argue are dispositive or at least persuasive on this issue. In the *Wultz* matter, the choice of law analysis undertaken by the Southern District Court found that there was a conflict in the pertinent conduct-regulating laws of Israel and New York, as well as competing interests among the parties for applying the laws of their jurisdiction (*Wultz III*, 811 F Supp 2d at 852). After weighing the parties' interests—New York's in regulating financial institutions; Florida's as the domicile of the decedent, the injured, and their family; and Israel's in combating terrorism and protecting its citizens and territory—the district court was unable to find "conclusively" that either New York or Israel had the greater interest (*id.* at 851, 852). It therefore deferred to the "weight of the particular precedent that suggests that when conduct-regulating rules are at issue, and when the suit arises out of personal injury, the locus of the tort controls," and thus that Israeli law would apply (*id.* at 852).

Following publication of *Wultz III*, the Second Circuit affirmed the dismissal of the *Licci* litigation as against American Express Bank (AmEx Bank) but changed the analysis (672 F3d 155). It acknowledged the rule that, for conduct-regulating rules, "the

law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders" (*Licci II* at 158 [internal quotation marks omitted]). However, it then reasoned that as the conduct-regulating rule in question was the scope of a bank's duty toward non-customers for acts of its customers and, because the challenged conduct of AmEx Bank took place in New York, AmEx Bank is headquartered in New York and it administered its correspondent banking services in New York, therefore New York had the greatest interest in the litigation (*id.*). The Second Circuit recognized that the plaintiffs were injured and domiciled in Israel, but "those factors d[id] not govern where . . . the conflict pertains to a conduct-regulating rule" (*id.*, comparing *GlobalNet Financial.Com, Inc. v Frank Crystal & Co., Inc.*, 449 F3d 377, 384-385 [2d Cir 2006]). The Second Circuit thus did not address the rule that when the conduct takes place in one jurisdiction and the plaintiff suffers injury in another, the locus of the plaintiff's injury will have the greater interest.

Because of the outcome in *Licci II*, a case with similar facts to *Wultz* but a different analysis, the Southern District Court withdrew its opinion in *Wultz III*, and subsequently issued a reconsidered decision (*Wultz IV*, 865 F Supp 2d 425). *Wultz IV* reasoned that "in this context," the law of the locale of the defendant's conduct is what governs (*id.* at 429). *Wultz IV* concluded that based on the location where BOC's tortious conduct allegedly occurred, including its failure to comply with the Israeli demand, China had the greater interest as to the non-federal claims in regulating bank conduct within its borders (*id.* at 428-249).[7]

Of course, this court is not bound by the Second Circuit decision or that of the district court as concerns New York law. We respectfully disagree with the Second Circuit's reasoning in *Licci II*, in particular because it did not address the rule that when the plaintiff and defendant are in different jurisdictions, it is the place of the last event necessary to cause the injury, here the rocket attacks and bombings, that is considered to

---

**7.** More recently, the district court granted BOC's motion to dismiss two of the non-federal claims, including the negligence claim, based on Chinese law principles. It denied dismissal of the claim of vicarious liability and breach of statutory duty (*Wultz v Bank of China Ltd.*, 2012 WL 5431013, *5-6, 2012 US Dist LEXIS 161399, *18-21, 26 [Nov. 5, 2012]).

have the greater interest. We see no reason to deviate from this well-settled principle in the circumstances alleged. Indeed, this case's posture is similar to that in *Devore* (58 AD3d 138), involving three Michigan residents injured in Michigan by taking a drug manufactured by the New York-based defendant. In *Devore*, we declined to follow the reasoning of the district court in *Carlenstolpe v Merck & Co., Inc.* (638 F Supp 901 [SD NY 1986], *appeal dismissed* 819 F2d 33 [2d Cir 1987]). Although acknowledging the generally controlling New York law that when the place of the alleged tort differs from the place of injury, the latter locale is defined as the place of the injury, *Carlenstolpe*, a products liability case, held the place of the wrong was where the defendant developed and manufactured the allegedly defective vaccine (*Devore* at 141, 142, citing *Carlenstolpe* at 910). We held in *Devore* that *Carlenstolpe*'s reasoning was unsupported in the case law, as well as based on a different set of circumstances (58 AD3d at 141-142).

Applying the principles of *Devore* to the case at bar, we hold that Israel, the location of the plaintiffs' injuries, has the greater interest in seeing its laws enforced, and Israeli law should govern this action.

However, BOC argues that if Israel's laws are applied and the claims go forward, this would run against U.S. policy and law that banks in general do not have a duty to non-customers for the torts of its customers, other than for trust and fiduciary accounts (*see Lerner v Fleet Bank*, 459 F3d at 286-288). Where the choice of law analysis leads to the application of foreign law, a court may only refuse to apply that law if its application would violate public policy, "some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal," and would be "truly obnoxious" (*Cooney*, 81 NY2d at 78, 79 [internal quotation marks omitted]; *Hugh O'Kane Elec. Co., LLC v MasTec N. Am., Inc.*, 19 AD3d 126, 127 [1st Dept 2005]). "The public policy doctrine is an exception to implementing an otherwise applicable choice of law in which the forum refuses to apply a portion of foreign law because it is contrary or repugnant to its State's own public policy" (*Schultz v Boy Scouts*, 65 NY2d at 202 [citation omitted]).

A party seeking to invoke the public policy doctrine has the "heavy burden" of proving that the foreign law is contrary to New York public policy (*Cooney*, 81 NY2d at 80, citing *Schultz v Boy Scouts* at 202). Public policy "is not measured by individual

notions of expediency and fairness or by a showing that the foreign law is unreasonable or unwise" (*Schultz v Boy Scouts* at 202 [citation omitted]). Public policy can be found in the state's constitution, statutes and judicial decisions (*Cooney* at 78; *Schultz v Boy Scouts* at 202). The proponent must also establish that there are "enough important contacts between the parties, the occurrence and the New York forum" that would implicate New York public policy and "thus preclude enforcement of the foreign law" (*Schultz v Boy Scouts* at 202).

BOC rests its argument on longstanding precedents that shield banks from third-party tort liability (*see e.g. Lerner v Fleet Bank*, 459 F3d at 286; *Century Bus. Credit Corp. v North Fork Bank*, 246 AD2d at 396).

■ We do not find case law to support the argument that except for trusts and fiduciary accounts, a bank can *never* be held liable to non-customers and particularly when addressing allegations such as those before us in this action. We certainly acknowledge the general rule that "[b]anks do not owe non-customers a duty to protect them from the intentional torts of their customers" (*In re Terrorist Attacks on September 11, 2001*, 349 F Supp 2d 765, 830 [SD NY 2005]). However, a tortfeasor's compliance with relevant laws and regulations will not insulate it from liability if it fails to act objectively reasonably (*see Lerner v Fleet Bank*, 459 F3d at 289, citing Restatement [Second] of Torts § 288C [1965] ["Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable (person) would take additional precautions"]).

The district court's analysis in *In re Terrorist Attacks* of the allegations brought against three banks reflects a more nuanced consideration of whether claims like those here should be dismissed. The rule, as articulated by the district court in that litigation, is that "[p]roviding routine banking services, without having knowledge of the terrorist activities, cannot subject [a bank] to liability" (*In re Terrorist Attacks* at 832, 835). Clearly outside the scope of "routine" banking services would be allegations that a bank knew or had reason to know that it was providing material support to terrorists, or that the bank was involved in, had knowledge of, or participated in any wrongful conduct, or ignored any regulations regarding a customer's account (*id.*; *see also Licci I* at 410 [absent allegations that Amex Bank had ties to Hizbollah, or knew or had reason to believe that the monies at issue would be used to carry out terrorist attacks on

civilian targets, "noncompliance with banking laws and industry standards alone will not render a bank negligently liable for the violent attacks committed by a terrorist organization who benefitted, in some general, nondescript manner, from monies passing through the bank during the performance of routine banking services"]).

BOC argues that this public policy recognizes that banks deal with countless customers and transactions and would become subject to limitless liability if they had a duty to protect the general public from their customers' torts. We find that BOC overstates the rule in this instance. Here, it is alleged that BOC knowingly facilitated acts of terrorism against innocent civilians, and did so after being put on notice by officials of PRC's central bank at the insistence of Israeli government officials. BOC's argument that it was doing nothing more than "routine" banking services is unpersuasive. Although New York does not generally recognize a duty on the part of banks to noncustomers, that does not mean that New York policy would prohibit recovery under the alleged facts, if proven.

■ Accordingly, we find that there is nothing repugnant to New York public policy in holding that Israeli law applies to this action. We also find that the complaint has sufficiently alleged negligence under Israeli law.[8] As to the claim of breach of a statutory duty, at this juncture, this court will rely upon the detailed analysis provided in *Wultz I* of Israel's section 63 of the CWO. *Wultz I* concluded that the tort is civil in nature, contrary to defendant's argument; that the specific Israeli penal enactments at issue can be applied extraterritorially; that the complaint sufficiently alleged a duty that the bank owed to the plaintiffs, who were of the class intended to be protected by the enactments; and that the duty was breached (755 F Supp 2d at 67-69). Although a straightforward reading of the Israeli enactments would lead to the conclusion that they concern conduct that is broader in scope than most of what BOC is alleged to have done, plaintiffs' expert in Israeli law explains that BOC's alleged transmission of funds is sufficient to bring it under the enactment forbidding the "giving" or "payment" of funds to terrorist groups. Since we must accord plaintiffs the benefit of

---

8. This court is well aware that certain other terrorism-related litigations have been dismissed based on the perceived failure of those plaintiffs to adequately plead causation (*see e.g. Rothstein v UBS AG*, 708 F3d 82 [2d Cir 2013]). Because Israeli law governs, the issue of causation, as well as duty, can be fleshed out during discovery and the trial.

every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]), we conclude that this cause of action sounding in breach of section 63 of the Israeli CWO is sufficiently pleaded for the purposes of defeating defendant's pre-answer motion to dismiss.

We turn to BOC's alternative argument, that the court should have dismissed the claims on forum non conveniens grounds. We affirm the motion court's denial of that branch of the motion.

"The doctrine of forum non conveniens permits a court to dismiss an action when, although it may have jurisdiction over a claim, the court determines that 'in the interest of substantial justice the action should be heard in another forum' " (*National Bank & Trust Co. of N. Am. v Banco De Vizcaya*, 72 NY2d 1005, 1007 [1988], *cert denied* 489 US 1067 [1989]; CPLR 327). The movant seeking dismissal has a "heavy burden" of establishing that New York is an inconvenient forum and that a substantial nexus between New York and the action is lacking (*see Kuwaiti Eng'g Group v Consortium of Intl. Consultants, LLC*, 50 AD3d 599, 600 [1st Dept 2008]; *Creditanstalt Inv. Bank AG v Chadbourne & Parke LLP*, 14 AD3d 414, 415 [1st Dept 2005]).

The factors in weighing such a motion to dismiss include the burden on New York courts, potential hardship to the defendant, the unavailability of an alternate forum, the residence of the parties, and the location of the events giving rise to the transaction at issue in the litigation, with no one factor controlling (*see Islamic Republic of Iran v Pahlavi*, 62 NY2d 474, 479 [1984], *cert denied* 469 US 1108 [1985]; *Ghose v CNA Reins. Co. Ltd.*, 43 AD3d 656, 660 [1st Dept 2007], *lv denied* 10 NY3d 712 [2008]). Other factors may include the location of potential witnesses and documents and the potential applicability of foreign law (*see Shin-Etsu Chem. Co., Ltd. v ICICI Bank Ltd.*, 9 AD3d 171, 176-177 [1st Dept 2004]). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed" (*Anagnostou v Stifel*, 204 AD2d 61, 61 [1st Dept 1994]), even where the plaintiff is not a resident of New York (*see OrthoTec, LLC v Healthpoint Capital, LLC*, 84 AD3d 702, 703 [1st Dept 2011]).

BOC argues that China has a substantial nexus with the claims because of its interest in regulating its banks, in that the majority of the alleged tortious conduct occurred in China and much of the relevant evidence is there. In addition, these

reasons are why, according to BOC, the claims should not be litigated in New York.

█ We do not find in the interest of substantial justice that the action should be heard in China rather than New York, or that the balance of factors point in favor of dismissal. "[T]hat another forum may have a substantial interest in adjudicating an action is but one factor to be weighed" in deciding a motion to dismiss based on forum non conveniens (*Aon Risk Servs. v Cusack*, 102 AD3d 461, 463 [1st Dept 2013]). Although we hold that New York's interest is not sufficient to require the application of New York law herein, nonetheless New York has a sufficient interest and nexus with the claims, because New York banking facilities were allegedly used to process the wire transfers (*see Georgia-Pacific Corp. v Multimark's Intl.*, 265 AD2d 109, 112 [1st Dept 2000]; *cf. Chawafaty v Chase Manhattan Bank*, 288 AD2d 58 [1st Dept 2001], *lv denied* 98 NY2d 607 [2002] [incidental use of a New York bank insufficient to create a nexus]; *and see Licci v Lebanese Can. Bank, SAL*, 20 NY3d at 340 [holding that repeated use of a New York bank account establishes "an articulable nexus" between the transaction and the alleged breach]).

The motion court properly found that BOC failed to meet its burden, given that it is currently litigating and engaged in discovery in the *Wultz* case in federal court in New York, after failing to be granted dismissal on forum non conveniens grounds. As the motion court aptly noted, such dismissal would actually increase the burden on the parties by requiring dual litigations in distant fora (*see Bank Hapoalim [Switzerland] Ltd. v Banca Intesa S.p.A.*, 26 AD3d 286, 288 [1st Dept 2006]). Therefore, we agree with the motion court that dismissal based on forum non conveniens is unwarranted.

Accordingly, the order of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered July 8, 2011, which denied defendant's motion to dismiss the complaint, should be affirmed, without costs. Plaintiffs' appeal from the aforesaid order should be dismissed, without costs.

SWEENY, J.P., MOSKOWITZ and RICHTER, JJ., concur.

Order, Supreme Court, New York County, entered July 8, 2011, affirmed, without costs. Plaintiffs' appeal from the aforesaid order, dismissed, without costs.