15-4164
*Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Financial Services International, Inc., et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of November, two thousand sixteen.

Present:
> DEBRA ANN LIVINGSTON,
> RAYMOND J. LOHIER, JR.
> *Circuit Judges*,
> JED S. RAKOFF,
> *District Judge*.*

---

DESARROLLADORA FARALLON S. DE R.L. DE C.V.,

> *Plaintiff-Appellant*,

> v.                                                              15-4164-cv

CARGILL FINANCIAL SERVICES INTERNATIONAL, INC., CARVAL INVESTORS, LLC, RAMSFIELD HOSPITALITY FINANCE, LLC, MATTHEW BOGART, THOMAS HUETTNER,
> *Defendants-Appellees*.

CARGILL, INC.,
> *Defendant*.**

---

* Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

** The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

| For Plaintiff-Appellant: | JOHN G. BALESTRIERE, Balestriere Fariello, New York, NY (Jillian L. McNeil, Paul M. Tarr, on the brief) |
|---|---|
| For Defendants-Appellees: | MICHAEL I. VERDE, Katten Muchin Rosenman LLP, New York, NY (Philip A. Nemecek, Tenley Mochizuki, on the brief) |

Appeal from a judgment of the United States District Court for the Southern District of New York (Scheindlin, *J*.).

**UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Desarrolladora Farallon, S. de R.L. de C.V. ("Farallon") appeals from a judgment of the United States District Court for the Southern District of New York (Scheindlin, *J*.) granting the motion to dismiss by Defendants-Appellees Cargill Financial Services International, Inc. ("Cargill Financial"), CarVal Investors, LLC ("CarVal," and, together with Cargill Financial, "Cargill"), Ramsfield Hospitality Finance, LLC ("Ramsfield"), Matthew Bogart, and Thomas Huettner. Farallon argues that the district court erred (1) in applying New York, rather than Mexican, law in adjudicating the motion to dismiss Farallon's commercial tort and contract claims; (2) even assuming New York law applies, in its application of New York law; and (3) in denying Farallon's motion for post-judgment relief. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. Because there is no actual conflict between the relevant laws of New York and Mexico, and because the district court correctly applied this law, we affirm the judgment of the district court.

## I.  Background[1]

This case concerns the fallout from a real estate venture in Cabo San Lucas, Mexico, which Farallon, a Mexican limited liability partnership, and Mexvalo S. de R.L. de C.V. ("Mexvalo"), a Mexican subsidiary of Cargill Financial, are jointly developing into a high-end resort property.  In the middle of the last decade, Farallon, then the owner of the Cabo San Lucas property ("the Property"), sought equity investment to help fund development.  This search identified Cargill as a potential source of capital.

Discussions about the size and structure of the investment led to a preliminary Contribution Agreement, entered into between, as relevant here, Farallon and Cargill Financial (the "Contribution Agreement").  The Contribution Agreement lays out the basic design of the project and the parties' respective investments.  The Property would be held by a *fideicomiso*, a trust-like entity under Mexican law often used to facilitate foreign investment.  The Contribution Agreement slated the parties thereto to be beneficiaries of the *fideicomiso* (the "Trust"), with the Trust itself to be governed by the terms of an agreement that the parties agreed to enter into simultaneously with the establishment of the Trust.

Continuing negotiations concluded with the signing, on May 17, 2006, of the CP Project Trust Governance Agreement (the "TGA").  The TGA differed from the Contribution Agreement in several significant ways, including by substituting Mexvalo for Cargill Financial as both settlor and beneficiary of the Trust.  The TGA dictated that the Trust would be managed by a technical committee (the "Technical Committee"), with one member appointed by each of Farallon and Mexvalo.  The TGA also included an expansive integration clause terminating all

---

[1] In the posture of this case, we take as true the facts alleged in Farallon's complaint and the affidavits and agreements referenced therein.

prior agreements, including, but not limited to, the Contribution Agreement, and requiring that all collateral agreements affecting the TGA be entered into in writing. Disputes relating to the TGA are specifically governed by a choice of law and binding arbitration clause.

To finance construction of the Property, the Trust secured a $65 million construction loan from WestLB, a German bank. Construction delays initially plagued the project and the parties sought further debt financing, but, as a result of the financial crisis, WestLB was unable to fund a scheduled second tranche of the construction loan. Cargill encouraged the Trust to borrow from Ramsfield, in which CarVal has an equity stake, as an alternative to WestLB. Ramsfield would later also be retained to manage part of the development project, again at the encouragement of Cargill.

As construction delays continued, the Trust sought several extensions on the WestLB construction loan. By January 7, 2011, however, the process had dragged on long enough that WestLB gave notice that it was holding the Trust in default. WestLB agreed to forbear from foreclosure as the Trust sought substitute financing to enable it to pay off and replace the Construction Loan. During this period, defendant Thomas Huettner sat on the Trust's governing committee as the Mexvalo representative. Farallon alleges that Huettner told Farallon that Cargill intended to oppose any replacement funding for the Construction Loan that permitted Farallon to retain control over the project, and Cargill allegedly refused to support a replacement financing package put together by Farallon. Ultimately, a Cargill affiliate, Cargill Soluciones Empresariales, S.A. de C.V., SOFOM, E.N.R. ("Cargill SOFOM"), purchased the construction loan from WestLB.

After purchasing the loan, Cargill SOFOM allegedly began to exercise its creditor rights far more aggressively than WestLB had. It allegedly excluded Farallon from the books and

4

records of the Trust and Farallon representatives from the premises and removed Farallon's representative from the Trust's governing committee. Farallon alleges that Cargill SOFOM also exercised its rights under the loan agreement to hold the Trust in default, permitting it to accrue interest at the higher default rate and extract resources from the Trust to the detriment of Farallon.

Farallon also claims that Matthew Bogart, the Mexvalo representative on the Trust's governing committee replacing Huettner, improperly exercised his limited authority by replacing the resort manager that had been jointly selected by Farallon and Mexvalo with a new manager allegedly serving at the behest of Cargill. Finally, Farallon claims that Cargill used its position of control to interfere with Farallon's business relationships, including by using its influence to disrupt Farallon's attempt to reach out to WestLB and by interfering separately with Farallon's relationship with a foundation with which it had a long-term investment relationship.

Farallon filed the complaint initiating this case on January 23, 2015. On April 22 of that year, Mexvalo – not a defendant here – commenced arbitration against Farallon under the TGA.[2] The arbitration hearing was ultimately scheduled for the following March.

On October 2, 2015, Farallon filed an amended complaint. Farallon's amended complaint alleged that it had entered into a parallel implied joint venture agreement with Cargill that predated the TGA, that this agreement was enforceable under Mexican law, and that, by its actions, Cargill breached that agreement and the good faith and fiduciary duties imposed by Mexican law in connection with the parties' commercial and contractual relationships. Farallon also argued that Cargill's alleged meddling in Farallon's business relationships gives rise to a

---

[2] Although not necessary to our decision today, selections from the testimony in the parallel arbitration proceeding introduced into the record before us suggest that Farallon did, in fact, litigate many of these issues in arbitration.

tortious interference claim.[3]  The defendants thereafter filed a motion to dismiss, which the district court granted on December 3, 2015.

In advance of their scheduled arbitration hearing, Mexvalo and Farallon exchanged witness and expert statements regarding the parties' claims.   On March 4, 2016, Farallon filed a motion for post-judgment relief with the district court pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), arguing that certain of these witness statements supported its claims in the action now before this Court.   Farallon subsequently was granted leave to withdraw and refile, and, on April 8, 2016, Farallon did so, including in its new motion other testimony from the arbitration and asking, in addition, for leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).   On April 29, 2016, the district court denied Farallon's motion in its entirety.   Farallon timely appealed.

## II.   Discussion

### A.  Motion to Dismiss

Our review of a district court's dismissal for failure to state a claim is *de novo*, and we accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiffs' favor.  *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013).   To survive a motion to dismiss, the complaint must include sufficient facts which, accepted as true, would state a facially plausible claim for relief.   *Id.*   We also review a district court's choice of

---

[3]  Specifically, Farallon alleged: (1) breach of implied contract; (2) violation of the duty of good faith; (3) aiding and abetting violation of duty of good faith; (4) violation of duty to avoid conflicts of interest; (5) aiding and abetting violation of duty to avoid conflicts of interest; (6) breach of fiduciary duty; (7) aiding and abetting breach of fiduciary duty; (8) tortious interference; (9) unjust enrichment; and (10) a claim for an accounting.   Farallon's complaint identified only certain of these claims as being brought under Mexican law, but in its memorandum of law before the district court and brief on appeal it characterizes all of these claims as Mexican law-based commercial tort or contract claims.

law determination – fundamentally, a question of law – *de novo*. *Curley v. AMR Corp.*, 153 F.3d 5, 11 (2d Cir. 1998).

Farallon argues that New York's choice of law rules, which are controlling here, *Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003), dictate that we apply Mexican, rather than New York, law in evaluating the viability of its claims. However, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Matter of Allstate Ins. Co. (Stolarz-N.J. Mfrs. Ins. Co.)*, 81 N.Y.2d 219, 223 (1993).

The question whether the laws of two jurisdictions are in actual conflict turns on whether there is any substantive difference between the jurisdictions' law that is potentially relevant to the disposition of the case before the court. "To find that there is an 'actual conflict,' the laws in question must provide different substantive rules in each jurisdiction that are 'relevant' to the issue at hand and have a 'significant possible effect on the outcome . . . .'" *Elmaliach v. Bank of China Ltd.*, 110 A.D.3d 192, 200 (1st Dep't 2013) (quoting *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.* ("*Finance One*"), 414 F.3d 325, 331 (2d Cir. 2005)). So long as there is no relevant conflict, the fact that two jurisdictions might have different theoretical approaches to some substantive area of law is immaterial to the conflicts of law issue.

As the district court recognized, the effect of the TGA's integration clause under each of New York and Mexican law is central to the viability of Farallon's claims. If, under the law of both jurisdictions, the TGA is the sole controlling agreement by virtue of the integration clause, Farallon's claims in this action would be barred. The TGA's integration clause specifically terminates all prior agreements, including those agreements between Farallon and Cargill entities other than Mexvalo, such as the Contribution Agreement. It is therefore drafted broadly enough

7

to capture the implied joint venture agreement with Cargill which, Farallon alleges, predated the TGA, such that any alleged breaches of that agreement would not be actionable. The integration clause also makes the TGA the exclusive agreement governing the development of the Property and so forecloses any of Farallon's claims that are predicated on collateral agreements pertaining to the resort's development. Moreover, if the TGA is the exclusive agreement relating to the Property, Farallon would be barred from bringing the vast majority of its claims against Cargill or any Cargill-related entity other than Mexvalo, the sole Cargill-related entity party to the TGA, and would also, by the TGA's binding arbitration clause, be precluded from bringing these claims in this forum. Thus, the relevant question for the conflicts of law analysis is whether there are substantive differences between Mexican and New York law that would materially impact our interpretation of the TGA's integration clause.

Given the clear terms of the TGA's integration clause, we find no reason to distinguish between the effect of the TGA under either New York or Mexican law. New York law holds that "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). The effect New York law gives to an integration clause is a special instance of this general rule: by the mechanism of an integration clause the parties make explicit their intent to have the current agreement be exclusive with respect to the object of their contract and to bar either party from introducing evidence of a collateral agreement. *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436-37 (2013); *Town New Dev. Sales & Mktg. LLC v. Price*, 127 A.D.3d 549, 549 (1st Dep't 2015).

We do not find Mexican law any different on this point. Article 1851 of the Federal Civil Code of Mexico – the primary source of contract law in Mexico, a civil law jurisdiction –

8

provides that "[i]f the terms of a contract are clear and leave no doubt about the intention of the parties, [the contract] will be subject to the literal meaning of its provisions." Código Civil Federal [CC] [Federal Civil Code] ("Mexican Federal Civil Code"), Art. 1851, Diario Oficial de la Federación [DO], 24 de Diciembre de 2013. Here, the literal meaning of the TGA's integration clause is clear. The clause specifically terminates all prior agreements and bars evidence of collateral agreements by requiring that all modifications to the TGA be made in writing and signed by the parties to the TGA.

Moreover, by entering into the TGA, inclusive of its integration clause, Farallon demonstrated its consent to the termination of all collateral agreements and to making the TGA the sole operative document. As under New York law, Mexican law binds parties who have exhibited consent to the substance of their agreement. Mexican Federal Civil Code, Art. 1796 ("Contracts are perfected by the mere consent of the parties . . . [and] bind the parties . . . to the fulfillment of their express agreement . . . [and] also to the consequences that, pursuant to their nature, derive from good faith . . . or from the law.").[4] In the circumstances of this case, that principle requires us to enforce the TGA's integration clause as written.

The TGA's clear integration clause undercuts Farallon's claims. Farallon's complaint repeatedly alleges that it entered into an implied joint venture agreement predating the TGA with Cargill. Even taking this allegation as true, that agreement would have been terminated by the TGA's integration clause. Thus, Farallon's claims for breach of implied contract were properly dismissed.

---

[4] The expert testimony Farallon submitted in support of its Mexican law claims is not to the contrary and, in fact, confirms the fundamental principle of both New York and Mexican law that parties to a contract are bound by the express terms of their agreement.

Farallon also argues that, separate from either the alleged implied joint venture agreement or the TGA, Cargill breached the duty of good faith it owed to its commercial partner, Farallon, under Mexican law and that the good faith duties imposed by Mexican law are more expansive than any imposed under New York law. As a civil law jurisdiction, Mexican tort law is governed by the generalized and broad statutory duty of "good customs." *See Curley*, 153 F.3d at 14 (citing Mexican Federal Civil Code art. 1910). We have recognized that a conflict of Mexican and New York tort law may very well arise in the personal injury context. *See id.* at 14-15. But after an independent review of Mexican law, we are unable to discern (and Farallon has not provided) any authority for Farallon's central claim that Mexican tort law imposes good-faith obligations on business associates who are not in privity with each other.

As even the expert affidavits Farallon submitted in support of its claim make clear, the good faith duties Farallon argues apply under Mexican law are structured by the parties' contractual relationships. *See* Mexican Federal Civil Code, Art. 1796 (providing that contracts bind the parties "to the fulfillment of their express agreement . . . [and] also to the consequences that, pursuant to their nature, derive from good faith"). The affidavit submitted by Dr. Claus von Wobeser, an expert on Mexican law, expressed the duty of good faith as "requir[ing] that in the negotiations of a contract, parties act with honesty, inform their counterparties of the essential elements of the contract, and [] not let their counterparty remain in error or mistake." App'x 163.8. Similarly, the judicial thesis cited by Farallon's other Mexican law expert, José Victor Torres Gómez, articulates the duty of good faith under Mexican law as arising in connection with the parties' contract.[5] Because the TGA's integration clause makes it the sole

---

[5] Though a thesis is not a binding interpretation of Mexican law, it is indicative of the way Mexican courts understand the law.

10

surviving contract pertaining to the development of the Property, any claims Farallon has for breach of good faith must be brought in arbitration pursuant to the dispute resolution provision of that agreement.[6]

Farallon also alleges that, by acting pursuant to their own interests with respect to the development of the Property, Cargill Financial and CarVal breached their Mexican law duties to avoid conflicts of interest and breached their fiduciary duties to Farallon. But these allegations are similarly inseparable from the TGA. As both Farallon's experts note, there is no law in Mexico that specifically lays out the relevant fiduciary duties applicable here. Any fiduciary duties Mexican law might impose on settlors or beneficiaries of the Trust would be derived by analogy to the corporate context and from the Ley General de Sociedades Mercantiles, Mexico's statutory source of corporate law. But the fiduciary duties imposed by that law – including the duties to avoid conflicts of interest – are applicable only to the shareholders in, or directors of, the corporation, here, by analogy, Mexvalo and Mexvalo's representative on the Trust's governing committee. *See, e.g.*, Ley General de Sociedades Mercantiles [LGSM] [General Law for Commercial Corporations], Arts. 156, 196, Diario Oficial de la Federación [DO], 15 de Diciembre de 2011. Because the legal basis for these allegations depends on the Trust's corporate-like structure, they effectively allege a violation of the TGA, to which neither Cargill Financial nor CarVal are parties and which claims, in any case, must be brought pursuant to the TGA's binding arbitration provision. Thus, those of Farallon's claims predicated on Cargill's

---

[6] The same holds true with respect to Farallon's claim for an accounting. Since the TGA is the parties' surviving agreement, Farallon's claims for an accounting are linked to that agreement and, to the extent they are viable, Farallon is bound to arbitrate them.

11

and Cargill's representatives' alleged breach of fiduciary duties and conflicts of interest were properly dismissed as well.[7]

Farallon's complaint also alleged that Cargill had tortiously interfered with Farallon's business relationships, including a family with whom Farallon's owners had a long-standing business relationship. The district court took Farallon's tortious interference claim to have been pled under New York law, and conducted no conflicts of law analysis with respect to this claim. This was objectively reasonable: Farallon's complaint did not refer to Mexican law when discussing its tortious interference claim. Moreover, neither of Farallon's experts discussed the implications of Mexican law for that claim. However, Farallon now argues, as it did in passing in its memorandum of law before the district court, that its tortious interference claim was intended to invoke Mexican law.

Federal Rule of Civil Procedure 44.1 requires parties "who intend[] to raise an issue about a foreign country's law [to] give notice by a pleading or other writing." Rule 44.1's notice requirement is highly flexible – for instance, a party need not necessarily provide notice in its initial filing before the court and need only give sufficient notice to "avoid unfair surprise," *Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 585 (2d Cir. 2005) – but it is not without some outer limit. "Though [] Rule 44.1 establishes that courts may, in their discretion, examine foreign legal sources independently, it does not require them to do so in the absence of any suggestion that such a course will be fruitful or any help from the parties." *Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 155 n.3 (2d Cir. 1968) (citing Arthur Miller, *Federal Rule 44.1 and the "Fact" Approach to Determining Foreign Law: Death*

---

[7] As with Farallon's claims for breach of good faith duties, this includes Farallon's aiding and abetting claims against Ramsfield, which are not independent from Farallon's claims against Cargill itself.

*Knell for a Die-Hard Doctrine*, 65 MICH. L. REV. 613, 692–702 (1967)). This rule is a function of Rule 44.1's notice requirement: where the only hint that foreign law might apply comes from a court's attempt to draw reasonable inferences from the facts in a plaintiff's complaint, without any guidance from the plaintiff as to the nature of the foreign law claim, the plaintiff has provided insufficient notice of the potential application of foreign law that Rule 44.1 requires.

Here, though Farallon argues that its tortious interference claim is based on Mexican law, it points to no support for that proposition. As the author of the treatise Farallon repeatedly cites to, Jorge Vargas, has observed, tortious interference "may be considered a true legal construct of U.S. law." Jorge Vargas, *Mexican Law in California and Texas Courts and the (Lack of) Application of Foreign Law in Mexican Courts*, 2 MEX. L. REV. 45, 60 (2009). And as the Ninth Circuit has noted, "New York recognizes a claim for tortious interference, whereas Mexico does not." *Coufal Abogados v. AT&T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000); *see also Panel Discussion: International Tort Litigation Involving the United States and Mexico*, 13 U.S.-MEX. L.J. 111, 111 (2005) ("Mexico's courts do not recognize the concept of tortious interference"). Put another way, the conflicts of law analysis that Farallon would have us conduct would undercut its claim, as its tortious interference claim is not cognizable under the law of Mexico, and Farallon advocates application of Mexican law. Thus, Farallon's tortious interference claim, like each of its other claims, was properly dismissed as well.[8]

---

[8] Though Farallon's brief passingly notes an unjust enrichment claim, it offers no supporting argumentation that would distinguish that claim – which it merely includes in a list of alleged contract claims under Mexican law – from the analysis applicable to any of the other contract law claims. To the extent any such argument might exist, the absence of any discussion of that argument in Farallon's brief renders it waived. *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001).

### B. Rule 59 and 60 Motions

We review Farallon's appeal of the district court's denial of its motion for reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b) for abuse of discretion. *Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010). To ground a motion for reconsideration on the basis of newly discovered evidence, "[t]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001). Farallon's motion was based on certain witness testimony from the parallel arbitration proceeding between Farallon and Mexvalo.

At most, this new evidence amounts to testimony by certain individuals working for Cargill that they referred to the Trust – an business structure unfamiliar to people used to operating in a U.S. corporate law system – as a "joint venture." The testimony also suggests that the businesspeople involved in Cargill's Mexican investments often used legally imprecise language; rather than referring directly to Mexvalo, the holding company used for the equity investment in the Property, they often referred more generally to Cargill Financial and CarVal. But none of this testimony suggests a joint venture agreement separate from the TGA, and as a result, there was no abuse of discretion in the district court's decision to deny Farallon's Rule 59 and Rule 60 motions. And because Farallon's Rule 59 and Rule 60 motions were properly denied, its accompanying motion to amend its complaint was properly denied as well. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (holding that a party seeking to

14

amend pursuant to a Rule 59 or Rule 60 motion "must first have the judgment vacated or set aside" under those Rules).

## III.    Conclusion

We have considered Farallon's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk