10-1306-cv
Licci ex rel. Licci v. Lebanese Canadian Bank, SAL

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2010

(Argued:  February 25, 2011                    Decided: October 18, 2013
                    Amended: January 9, 2014)

Docket No. 10-1306-cv

------------------------------------

YAAKOV LICCI, a minor, by his father and natural guardian, ELIHAV LICCI,
and by his mother and natural guardian, YEHUDIT LICCI, et al.,

*Plaintiffs-Appellants-Movants-Petitioners*,

- v -

LEBANESE CANADIAN BANK, SAL; AMERICAN EXPRESS BANK LTD.,

*Defendants-Appellees-Respondents-Respondents*.

------------------------------------

Before:   KATZMANN, *Chief Judge*, and KEARSE and SACK, *Circuit Judges*.

The plaintiffs have made a motion for the Court to permit them to

file a petition for rehearing at this time despite the fact that a judgment had yet

1

to issue in this appeal. We grant the motion only insofar as it regards the filing of a petition for panel rehearing and deny the petition.

| Appearances: | ROBERT J. TOLCHIN (Meir Katz, *of counsel*), The Berkman Law Office, LLC, Brooklyn, NY, *for Plaintiffs-Appellants-Movants-Petitioners*. |
| | MARK P. LADNER, Morrison & Foerster LLP, New York, NY, *for Defendant-Appellee-Respondent-Respondent American Express Bank Ltd.* |

PER CURIAM:

On March 5, 2012, this Court filed an opinion affirming the judgment of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*) insofar as it dismissed that portion of the complaint that asserted claims against the defendant American Express Bank Ltd. ("AmEx").[1]

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL and Am. Express Bank, Ltd.*, 672 F.3d

---

[1] The Court simultaneously certified a question to the New York Court of Appeals with respect to the district court's *in personam* jurisdiction over the co-defendant Lebanese Canadian Bank, SAL. *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 673 F.3d 50 (2d Cir. 2012). On November 20, 2012, the New York Court of Appeals responded to the certification, *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 960 N.Y.S.2d 695, 984 N.E.2d 893 (2012), and the question of jurisdiction over that co-defendant remains pending before this court. This opinion does not deal with that portion of these proceedings regarding jurisdiction over the Lebanese Canadian Bank.

155 (2d Cir. 2012) ("*AmEx*").  On January 7, 2013, the appellants filed what they styled as a motion for leave to file a petition for rehearing and rehearing *en banc* prior to entry of judgment against them.  They appended to the motion a copy of the petition they sought to file.

On September 18, 2013, the appellants filed a letter pursuant to Federal Rule of Civil Procedure 28(j) calling to our attention a decision by the New York Supreme Court, Appellate Division, First Department, in *Elmaliach v. Bank of China Ltd.*, __A.D.2d__, 971 N.Y.S.2d 504 (1st Dep't 2013) ("*Bank of China*").  At our request, AmEx responded to the 28(j) letter on September 27, 2013, and the appellants responded to that letter on October 16, 2013.

We now grant the appellants' motion for leave to file a petition for panel rehearing, even though a judgment in this appeal had yet to issue, and we deny that petition.[2]

---

[2]  On October 30, 2013, the appellants filed a petition for rehearing *en banc*, arguing, *inter alia*, that our opinion, which conflicts with *Bank of China* and employs an interest-analysis approach, is erroneous because the New York Court of Appeals has stated that interest analysis is "limited to competing loss-allocation–not conduct-regulating–rules." *Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 319, 929 N.Y.S.2d 41, 43, 952 N.E.2d 1033, 1035 (2011).  Again at our request, AmEx responded to the appellants' petition on November 25, 2013.  We conclude that *Edwards*, itself a loss-allocation case, did not overrule *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994),

The facts and history of this litigation insofar as it involves the defendant

AmEx are set forth in our opinion in *AmEx*, 672 F.3d at 156, which in turn refers

to a more complete version of the facts contained in *Licci ex rel. Licci v. Lebanese*

*Can. Bank, SAL*, 673 F.3d 50 (2d Cir. 2012). We wrote in *AmEx*:

> This case concerns a series of rocket attacks launched by Hizballah, a Lebanese terrorist organization, at targets in northern Israel in July and August 2006. The plaintiffs are American, Canadian, and Israeli civilians who were injured, or whose family members were injured or killed, during the rocket attacks. They allege that [Lebanese Canadian Bank ("LCB")] knowingly maintained bank accounts for an alleged Hizballah affiliate, the Shahid (Martyrs) Foundation ("Shahid"), and carried out dozens of international wire transfers on Shahid's behalf. These wire transfers, which totaled several million dollars, were conducted using LCB's correspondent bank account at AmEx in New York. The plaintiffs assert that AmEx, by facilitating these wire transfers on behalf of LCB and Shahid, breached a legal duty of care to the plaintiffs and thereby caused the plaintiffs' injuries.

*AmEx*, 672 F.3d at 156. The parties disagreed as to whether New York or Israeli

law governs the plaintiffs' claims against AmEx. Assuming there is an actual

conflict between New York and Israeli law, we applied New York's

interest-analysis test to determine which law should apply and concluded that

which instructs courts to engage in interest analysis in conduct-regulating cases, 84 N.Y.2d at 521, 620 N.Y.S.2d at 311, 644 N.E.2d at 1002.

New York has the greatest interest in this litigation. All of the challenged conduct undertaken by AmEx occurred in New York, where AmEx is headquartered and where AmEx administers its correspondent banking services. Although the plaintiffs' injuries occurred in Israel, and Israel is also the plaintiffs' domicile, those factors do not govern where, as here, the conflict pertains to a conduct-regulating rule.

*Id.* at 158. We further concluded that

New York, not Israel, has the stronger interest in regulating the conduct of New York-based banks operating in New York. *See, e.g.*, [*Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 96, 480 N.E.2d 679, 684-85 (1985))] (noting the "locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct"). Accordingly, even assuming that the district court was mistaken in deciding that there was no actual conflict between New York law and Israeli law, . . . a choice-of-law analysis would nonetheless require application of New York law to the plaintiffs' negligence claim against AmEx.

*Id.* The parties agreed (as do we) that under New York law, AmEx has no

liability to the appellants for the harm to them that is the subject of this action.

*See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006). We therefore

decided that the case against Amex must be dismissed. We entered no

judgment, however, because the appeal regarding the district court's *in*

*personam* jurisdiction over the other defendant, Lebanese Canadian Bank, SAL,

5

remains pending following our certifying and the New York Court of Appeals responding to questions vital to that issue.

## DISCUSSION

The appellants now principally argue that under New York law as recently expressed by the Appellate Division, First Department, in *Bank of China*, we must withdraw our *AmEx* opinion applying New York law and conclude instead that Israeli law governs their claims against AmEx. We decline to do so.

### I.   The Binding Nature of the *Bank of China* Decision

We are bound, of course, by the law of New York as interpreted by the New York Court of Appeals. *See Comm'r of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 464 (1967); 28 U.S.C. § 1652. We "consider the language of the state intermediate appellate courts to be helpful indicators of how the state's highest court would rule." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005). "Although we are not strictly bound by state intermediate appellate courts," we will look to their decisions unless "convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)); *see also Estate of Bosch*, 387 U.S. at 465

6

("[E]ven in diversity cases [the Supreme] Court has . . . held that while the decrees of lower state courts should be attributed some weight . . . the decision is not controlling . . . where the highest court of the State has not spoken on the point.") (second and third ellipses in original; citation, internal quotation marks, and some alterations omitted).

We conclude that we are not bound by the First Department's decision in *Bank of China*. The New York Court of Appeals has already prescribed the choice-of-law rules applicable to the case at bar in *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985). *Bank of China* is thus not a statement of an unsettled or ambiguous rule, but rather an application of a previously established rule. Because we are persuaded that it is a mistaken application, as explained below, we decline to follow it.

II.    The Persuasiveness of the *Bank of China* Opinion

The crucial New York Court of Appeals decision relevant to this proceeding, and the one on which we principally relied in reaching our earlier conclusion, explicitly establishes an interest-analysis approach: "The law of the jurisdiction having the greatest interest in the litigation will be applied . . . ." *Schultz*, 65 N.Y.2d at 197, 491 N.Y.S.2d at 95, 480 N.E.2d at 684 (internal

7

quotation marks and alterations omitted).  As we pointed out in *AmEx*, interest

analysis is a "flexible approach intended to give controlling effect to the law of

the jurisdiction which, because of its relationship or contact with the occurrence

or the parties, has the greatest concern with the specific issue raised in the

litigation."  *AmEx*, 672 F.3d at 157-58 (quoting *Cooney v. Osgood Mach., Inc.*, 81

N.Y.2d 66, 72, 595 N.Y.S.2d 919, 922, 612 N.E.2d 277, 280 (1993) (intermediate

citation to Second Circuit authority omitted)).

Under *Schultz*, the interest analysis is applied differently depending on

whether the rules in question are conduct-regulating rules that "people use as a

guide to governing their primary conduct," or loss-allocating rules that

"prohibit, assign, or limit liability after the tort occurs."  *AmEx*, 672 F.3d at 158

(internal quotation marks omitted).

All parties and we agree that the law with which we are dealing is

"conduct regulating."  And as we further observed in *AmEx*, "[i]f conflicting

conduct-regulating laws are at issue, the law of the jurisdiction where the

[allegedly tortious acts] occurred will generally apply because that jurisdiction

has the greatest interest in regulating behavior within its borders."  *AmEx*, 672

F.3d at 158 (quoting *Cooney*, 81 N.Y.2d at 72, 595 N.Y.S.2d at 922, 612 N.E.2d at

8

280) (intermediate citation to Second Circuit authority omitted).[3] As we concluded in *AmEx*, "New York, not Israel, has the stronger interest in regulating the conduct of New York-based banks operating in New York." *Id.*

It seems to be without question that the conduct of AmEx that appellants allege was tortious occurred in New York. New York has the greatest interest in regulating conduct within its borders, and consequently its law applies.

We think that in *Bank of China*, the Appellate Division misapplied the *Schultz* rule by failing to give effect to the distinction between the two different kinds of tort-law rules for choice-of-law purposes. It cited *Schultz* for the proposition that "[w]here a defendant's negligent conduct occurs in one jurisdiction and the plaintiff suffers injuries in another, 'the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred,' that is, 'where the plaintiffs' injuries occurred.'" *Bank of China*,

---

[3] For additional cases in this Circuit applying the law of the jurisdiction where the allegedly tortious act occurred when conduct-regulating rules conflict, see *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270-71 (2d Cir. 1992); *LaSala v. Lloyds TSB Bank, PLC*, 514 F. Supp. 2d 447, 465-66 (S.D.N.Y. 2007); *HSA Residential Mortg. Servs. of Tex. v. Casuccio*, 350 F. Supp. 2d 352, 365-66 (E.D.N.Y. 2003); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 492-93 (S.D.N.Y. 2001); *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1075 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993).

9

__A.D.2d__, 971 N.Y.S.2d at 514 (quoting *Schultz*, 65 N.Y.2d at 195, 491 N.Y.S.2d at 94, 480 N.E.2d at 683). Put simply, *Bank of China* read *Schultz* to require a "place of injury" rule.

But *Schultz*'s reference to the "place of injury" rule occurred in the context of discussing the "traditional rule[]" of *lex loci delicti*, which equates the "place of the wrong" with the place of the injury. *Schultz*, 65 N.Y.2d at 195, 491 N.Y.S.2d at 93-94, 480 N.E.2d at 682-83. And, as the court went on to point out, it has "refused to invariably apply" that rule "to determine the availability of relief for commission of a tort." *Id.* at 196, 491 N.Y.S.2d at 94, 480 N.E.2d at 683. *Schultz* was explicit: "[W]hen the conflicting rules involve the appropriate standards of conduct, rules of the road, for example, the law of the place of the tort will usually have a predominant, if not exclusive, concern." *Id.* at 198, 491 N.Y.S.2d at 95, 480 N.E.2d at 684 (internal quotation marks omitted).[4]

---

[4] The court went on to explain that the reason for this rule is that, in such cases, "the locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests of the common-domicile jurisdiction." *Schultz*, 65 N.Y.2d at 198, 491 N.Y.S.2d at 96, 480 N.E.2d at 684-85.

The New York Court of Appeals has not been presented with this precise issue, *i.e.*, a conflict between the conduct-regulating rules of the place where the injury occurred and the conduct-regulating rules of the place where the conduct of the defendant in question occurred and whose laws did not impose on that defendant a duty of care toward the plaintiffs. Several decisions of the Appellate Division appear to have read *Schultz* to stand for the proposition that, when there is a conflict between the conduct-regulating rules of the place of the conduct and those of the place of the injury, it is the latter that generally apply. *See Bank of China*, --- A.D.3d ---, 971 N.Y.S.2d 504 (1st Dep't 2013); *Devore v. Pfizer Inc.*, 58 A.D.3d 138, 141, 867 N.Y.S.2d 425, 427-28 (1st Dep't 2008), *leave denied*, 12 N.Y.3d 703, 876 N.Y.S.2d 704 (2009);[5] *Ackerman v. Price Waterhouse*, 252

---

[5] The degree to which *Devore* rests on this ground is unclear to us. In *Devore*, the First Department set forth accurately the *Schultz* rule that "[w]hen the purpose of the statute is to regulate conduct, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." 58 A.D.3d at 141, 867 N.Y.S.2d at 427-28 (internal quotation marks omitted). While the *Devore* panel went on to state that the place of the tort is "generally defined as the place of the injury," *id.* at 141, 867 N.Y.S.2d at 428 (citing *Schultz*, 65 N.Y.2d at 195, 491 N.Y.S.2d at 94, 480 N.E.2d at 683 (discussing the "traditional rule[]" of *lex loci delicti*)), the court apparently did not ultimately rely on a place-of-injury analysis but rather on case law that under "a true application of the interest analysis approach, the law of the forum in which the products are sold should govern." *Devore*, 58 A.D.3d at 142, 867 N.Y.S.2d at 428-29 (quoting *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1130 n.16 (S.D.N.Y. 1992)) (internal quotation marks omitted).

A.D.2d 179, 192-93, 683 N.Y.S.2d 179, 189 (1st Dep't 1998). Respectfully, we do not agree with that interpretation. Although *Schultz* involved injuries some of which were experienced in a state different from the states in which the institutional tortfeasors' conduct (the allegedly negligent hiring, supervision, and retention of a child-molesting employee) occurred, the state in which each defendant employer's conduct occurred undeniably imposed a duty of care on that defendant, and the only question was whether to apply a loss-allocation doctrine (charitable immunity) that was recognized by only one of the states in which injury occurred.

The New York Court of Appeals has consistently explained that, for conduct-regulating rules, "the law of the jurisdiction where the [alleged] tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney*, 81 N.Y.2d at 72, 595 N.Y.S.2d at 922, 612 N.E.2d at 280; *see also In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 225, 597 N.Y.S.2d 904, 907, 613 N.E.2d 936, 939 (1993) ("*Stolarz*"). This is because "[w]here the defendant's exercise of due care . . . is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern." *Babcock v. Jackson*, 12 N.Y.2d 473, 483,

12

240 N.Y.S.2d 743, 750, 191 N.E.2d 279, 284 (1963). In the ordinary tort case, "both the wrong and the injury t[ake] place" in the same jurisdiction. *Id.* at 477 n.2, 240 N.Y.S.2d at 746 n.2, 191 N.E.2d at 280 n.2. But where they do not, it is the place of the allegedly wrongful conduct that generally has superior "interests in protecting the reasonable expectations of the parties who relied on [the laws of that place] to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future." *Schultz*, 65 N.Y.2d at 198, 491 N.Y.S.2d at 96, 480 N.E.2d at 684-85.

We recognize decisions of the Appellate Division as "a basis for ascertaining state law . . . unless [we are] convinced by other persuasive data that the highest court of the state would decide otherwise." *DiBella*, 403 F.3d at 112 (internal quotation marks omitted). To the extent that our decision in this case differs from that of *Bank of China* or other Appellate Division cases, it is because we are persuaded by the consistent rationale of the New York Court of Appeals as it has applied interest analysis. Here, we conclude that it is New York, and not Israel, that "has an overriding interest in regulating" the conduct of banks operating "within its borders," *Stolarz*, 81 N.Y.2d at 225, 597 N.Y.S.2d at

13

907, 613 N.E.2d at 939. Therefore, we adhere to our conclusion that the law applicable to plaintiffs' negligence claims against AmEx is that of New York.

We therefore reject the view of *Bank of China* that the law of the place of injury ordinarily or always governs where conduct-regulating rules are involved as inconsistent with the law as clearly established by New York's highest court in *Schultz*.

With respect to jurisdiction over the Lebanese Canadian Bank, we were unsure as to New York's applicable law and therefore certified questions to the New York Court of Appeals in order to answer the question in a manner consonant with the State's jurisprudence. We harbor no similar doubts as to the issues we resolved by *per curiam* opinion in *AmEx*.

III.    Other Observations

First, we recognize that the decision in *Bank of China* is subject to appeal. We issue this opinion nonetheless to make clear, in this complex set of proceedings, that the substance of the First Department opinion insofar as it is relevant to the appeal before us does not cause us to alter the conclusion we reached in our *per curiam* opinion in *AmEx*.

Second, for reasons that become obvious upon a reading of the *Bank of China* opinion, the facts in that case differ starkly from those before us.  Beyond our conclusions as to its challenge to the soundness of *AmEx*, we emphasize that we offer no views as to the law affecting or the proper outcome of that case and should not be understood to imply any.

## CONCLUSION

For the foregoing reasons, we GRANT the appellants' motion insofar as it asks us to hear their petition for panel rehearing prior to the entry of a final judgment in this appeal, and we DENY that petition.