13-4488-cv(L)
AHW Investment Partnership, et al. v. Citigroup Inc., et al.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of August, two thousand sixteen.

PRESENT:

        PETER W. HALL,
        GERARD E. LYNCH,
        SUSAN L. CARNEY,
                *Circuit Judges.*

_____

AHW INVESTMENT PARTNERSHIP, MFS, INC., ANGELA H. WILLIAMS, AS TRUSTEE OF THE ANGELA H. WILLIAMS GRANTOR RETAINED ANNUITY TRUST UAD MARCH 24, 2006, THE ANGELA WILLIAMS GRANTOR RETAINED ANNUITY TRUST UAD APRIL 17, 2006, THE ANGELA WILLIAMS GRANTOR RETAINED ANNUITY TRUST UAD MAY 9, 2006, THE ANGELA WILLIAMS GRANTOR RETAINED ANNUITY TRUST UAD NOVEMBER 1, 2007, THE ANGELA WILLIAMS GRANTOR RETAINED ANNUITY TRUST UAD MAY 1, 2008, THE ANGELA WILLIAMS GRANTOR RETAINED ANNUITY TRUST UAD JULY 1, 2008, AND THE ANGELA WILLIAMS GRANTOR RETAINED ANNUITY TRUST UAD NOVEMBER 21, 2008,

        *Plaintiffs-Appellants–Cross-Appellees*,

v.

Nos. 13-4488-cv(L),
13-4504-cv(XAP)

CITIGROUP INC., CHARLES PRINCE, VIKRAM
PANDIT, GARY CRITTENDEN, ROBERT RUBIN,
ROBERT DRUSKIN, THOMAS G. MAHERAS, MICHAEL
STUART KLEIN, DAVID C. BUSHNELL,

*Defendants-Appellees–Cross-Appellants.*

_____

FOR APPELLANTS-CROSS-APPELLEES:

STEVEN F. MOLO (Robert K. Kry and Hassan A. Shah, *on the brief*), MoloLamken LLP, New York, NY, and Jacob H. Zamansky, Zamansky LLC, New York, NY, for Plaintiffs-Appellants-Cross-Appellees.

FOR APPELLEES-CROSS-APPELLANTS:

WALTER RIEMAN (Brad S. Karp, Susanna M. Buergel, Jane B. O'Brien, and Stephen P. Lamb, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for Defendants-Appellees-Cross-Appellants.

Appeal from a judgment of the United States District Court for the Southern District of New York (Stein, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on October 30, 2013, is **AFFIRMED**.

Plaintiffs—a corporation, partnership, and seven grantor-retained annuity trusts ("GRATs") controlled by Florida residents Angela and Arthur Williams—allege that, between May 2007 and March 2009, Citigroup, Inc., and its officers made numerous fraudulent and negligent misrepresentations to them about the quality of their investment in Citigroup. Those representations, Plaintiffs allege, induced them to hold Citigroup stock that they would otherwise have sold, thereby causing them to incur losses in excess of $800 million. Plaintiffs appeal the order of the District Court (Sidney H. Stein, *J.*) dismissing their complaint for failure to state a claim. Defendants cross-appeal, arguing that the District

Court should have dismissed Plaintiffs' claims because they should have been brought in a shareholder derivative action, not as direct claims.

We certified the issue raised in the cross-appeal to the Delaware Supreme Court, asking that Court whether, under Delaware law, Plaintiffs' claims were properly treated as direct or derivative. *See AHW Inv. P'ship v. Citigroup Inc.*, 806 F.3d 695 (2d Cir. 2015).[1] In its response, the Delaware Supreme Court clarified that the claims are direct because "they belong to the holders and are ones that only the holders can assert, not claims that could plausibly belong to the issuer corporation, Citigroup." *Citigroup Inc. v. AHW Inv. P'ship*, — A.3d —, 2016 WL 2994902, at *9 (Del. May 24, 2016). Accepting the Delaware Supreme Court's interpretation of its law, we now turn to the remaining issues in the case.

## I.     Conflicts of Law

Before we can reach the merits of Plaintiffs' negligent misrepresentation and fraud claims, we must decide whether New York or Florida law controls with respect to two issues: (1) what types of damages are recoverable in a fraud claim, and (2) whether, to bring a negligent misrepresentation claim, a plaintiff needs to allege that he enjoyed a "special relationship" to the defendant.

In deciding issues regarding conflicts of law, we look to the law of New York as the forum state. *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006). When there is a conflict of law in tort cases, New York courts seek to "giv[e] controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963).

### A.  Conduct-Regulating or Loss-Allocating

To determine which jurisdiction has the "greatest concern" with the issue raised, we first ask whether the rules relevant to the issue are conduct-regulating or loss-allocating. *See Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993). "Conduct-regulating rules have the

---

[1] That opinion sets out the allegations in Plaintiffs' complaint in detail. *See AHW*, 806 F.3d at 697-98. For purposes of this summary order, we assume the parties' familiarity with the underlying facts and the procedural history of the case, to which we refer only as necessary to explain our decision to affirm.

prophylactic effect of governing conduct to prevent injuries from occurring." *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (1994). Loss-allocating rules, on the other hand, are "those which prohibit, assign, or limit liability *after the tort occurs*." *Id.* (emphasis added); *see also Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 198 (1985) (loss-allocating rules are those "relat[ing] to allocating losses that *result from admittedly tortious conduct*" (emphasis added)). If a rule is conduct-regulating, the law of the jurisdiction "where the tort occurred" will generally apply; otherwise, we will look at other factors, including the parties' domiciles. *Padula*, 84 N.Y.2d at 522 (internal quotation marks omitted).

Plaintiffs appear to concede that the negligent misrepresentation rule is conduct-regulating, so we need decide only to which category the rules on recoverable fraud damages belong. *See* Pls.' Br. 21-26 (arguing only that the damages rule is loss-allocating). Under New York law, "the true measure of damages for fraud is indemnity for the actual pecuniary loss sustained as the direct result of the wrong." *Starr Foundation v. American Int'l Grp., Inc.*, 901 N.Y.S.2d 246, 249 (App. Div. 1st Dep't 2010) (alternations omitted). Florida, on the other hand, has adopted two standards for the measurement of damages in an action for fraudulent representation, including not only an "'out-of-pocket' rule," like New York's, but also a "benefit of the bargain" rule. *Martin v. Brown*, 566 So.2d 890, 891 (Fla. Dist. Ct. App. 1990).

In our view, these damages rules are conduct-regulating because they define the type of injury that can support a claim of fraud. "Injury" is an element of a fraud claim under both Florida and New York law. The damages rules thus regulate which types of injuries must be shown to constitute a tort. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996); *Martin*, 566 So.2d at 891. In *Starr*, for instance, the First Department explained that the rationale for the out-of-pocket loss rule was that losses based on "a hypothetical lost bargain [are] too undeterminable and speculative to constitute a cognizable basis for damages." 901 N.Y.S.2d at 250 (citation and internal quotation marks omitted). A misrepresentation is tortious, therefore, only if it causes out-of-pocket losses. To hold otherwise would lead courts to award damages based solely on a "speculative . . . allegation that [the plaintiff] was injured at all," the court reasoned. *Id.*

4

In addition, the out-of-pocket damages rule is unlike the rules that the New York Court of Appeals has previously characterized as loss-allocating. In *Padula*, summarizing its precedent, the Court of Appeals described as loss-allocating "charitable immunity statutes, guest statutes, wrongful death statutes, vicarious liability statutes, and contribution rules." 84 N.Y.2d at 522 (citations omitted). Each of these rules determines from whom and to what extent recovery may be sought when a victim *has suffered an injury* for which recovery is possible under the statute. None of these rules provides that a certain type of alleged injury cannot support a damages award at all. We therefore treat the damages rule as conduct-regulating.

## B. Place of Conduct or Place of Injury

Having concluded, as we do, that both rules at issue are conduct-regulating, we next ask which state's rules should apply here. "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney*, 81 N.Y.2d at 72. In *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 739 F.3d 45 (2d Cir. 2014) (per curiam), we observed that, under New York law, when the jurisdictions of the conduct and injury are distinct, "it is the place of the allegedly wrongful conduct that generally has superior 'interests in protecting the reasonable expectations of the parties who relied on the laws of that place to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future.'" *Id.* at 50-51 (quoting *Schultz*, 65 N.Y.2d at 198) (alterations omitted).[2] Here, the allegedly wrongful conduct—the misrepresentations by Citigroup and its officers—took place in New York, where Citigroup had its headquarters. We therefore conclude that New York's rules on fraud damages and negligent misrepresentation apply.

---

[2] In *Licci*, our Court declined to follow a decision of the First Department, which held that the law of the place of injury—rather than the law of the place of conduct—should govern. *See Licci*, 739 F.3d at 48 (declining to follow *Elmaliach v. Bank of China Ltd.*, 971 N.Y.S.2d 504 (App. Div. 1st Dep't 2013), *appeal withdrawn*, 26 N.Y.3d 964 (2015)).

## C. Failure to State a Claim

Applying New York law, we conclude that Plaintiffs have failed to state a claim for either fraud or negligent misrepresentation. Plaintiffs have conceded that they cannot successfully assert a negligent misrepresentation claim against Citigroup under New York law because they did not have a "special or fiduciary relationship" with any of the defendants. *See* Citigroup Ltr. Br. Ex. A, at 1-2 (Dkt. No. 13-4488, ECF No. 171).

Plaintiffs also have not stated a claim for fraud under New York law. As discussed above, under New York's out-of-pocket damages rule, recovery is limited to "*the actual pecuniary loss* sustained as the direct result of the wrong." *Starr*, 901 N.Y.S.2d at 249 (emphasis added) (internal quotation marks omitted). In *Starr*, as here, the plaintiff brought a so-called "holder" claim based on alleged lost profits: It sought to recover "the value it might have realized from selling its shares during a period when it chose to hold, under hypothetical market conditions for [the stock] (assuming disclosures different from those actually made) that never existed." *Id.* at 249. The First Department concluded that such claims are not cognizable because the plaintiff did not "allege any transaction in which it gave up anything in exchange for anything else," and therefore "did not lose or give up any value." *Id.* As noted above, the court concluded that damages in such a case are "too undeterminable and speculative to constitute a cognizable basis for damages." *Id.* at 250 (internal quotation marks and citation omitted).

Plaintiffs cannot avoid the effects of *Starr* by offering to calculate damages based on what they call a "fraud-free price" for Citigroup shares in May 2007—that is, the price that their expert determined would have been the stock price in that month had Citigroup made full disclosure of its financial condition—rather than the actual per-share sale price prevailing at the time of the contemplated sale. Cloaking its arguments in the mantle of pricing expertise does not alter the fact that Plaintiffs' use of the "fraud-free price" is, in essence, still an effort to recover "the value [they] might have realized from selling [their] shares . . . under hypothetical market conditions . . . that never existed," *id.* at 249. It therefore is not permitted under *Starr*.

6

The First Department's 1927 decision in *Continental Insurance Co. v. Mercadante*, 225 N.Y.S. 488 (App. Div. 1st Dep't 1927), does not counsel a different result. In that case, the First Department found that bondholders stated a claim for relief by alleging that they had been fraudulently induced to retain bonds that were actually "substantially worthless." *Id.* at 490. This decision is not inconsistent with *Starr*, as the *Starr* court observed, because there *was* an out-of-pocket loss in *Mercadante*: namely, the plaintiffs' initial investment in the bonds, which had been entirely forfeited. *Starr*, 901 N.Y.S.2d at 252. In this case, by contrast, Plaintiffs' shares were not "substantially worthless" because they constituted ownership interests in Citigroup, which remained (and remains) a going concern.[3] We conclude, as did the *Starr* court, that "[a]ssuming the continuing vitality of *Mercadante*, it offers no support for sustaining a fraud cause of action that . . . seeks recovery for the loss of the value that might have been realized in a hypothetical market exchange that never took place." *Id.*

Because neither Plaintiffs' claims of fraud or negligent misrepresentation are adequate under New York law, we conclude that the District Court properly dismissed Plaintiffs' complaint. In so deciding, we take no position on whether other types of holder claims, such as those seeking damages other than lost profits, may be cognizable under New York law. *Compare Matana v. Merkin*, 989 F. Supp. 2d 313, 323-324 (S.D.N.Y. 2013) (stating that *Starr* does not suggest that the New York Court of Appeals "would preclude holder claims altogether") *with In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 995 F. Supp. 2d 291, 314-15 (S.D.N.Y. 2014) (stating that, after *Starr*, "New York may have barred all 'holder' claims").

---

[3] As Defendants point out, the precipitous drop in Citigroup's share price that formed the basis for the complaint occurred in the context of a global recession. *See* Defs.' Br. at 15-16 & n.2.

\* \* \*

We have considered Plaintiffs' remaining arguments and find them to be without merit. New York law governs Plaintiffs' complaint and does not permit their claims of negligent misrepresentation and fraud as pleaded. The judgment of the District Court is therefore **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court