17-2783-cv
Negrete v. Citibank

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of January, two thousand nineteen.

PRESENT:   PETER W. HALL,
           GERARD E. LYNCH,
                    *Circuit Judges,*
           PAUL G. GARDEPHE,
                    *District Judge.*[*]

---------------------------------------------------------------------

EDUARDO NEGRETE, GERVASIO NEGRETE,

　　　　　　　*Plaintiffs-Appellants,*

　　　　v.　　　　　　　　　　　　　　　　　　　　　　　No. 17-2783-cv

CITIBANK, N.A.,

　　　　　　　*Defendant-Appellee.*

---------------------------------------------------------------------

FOR APPELLANTS:             BLAINE H. BORTNICK, James W. Halter (*on the brief*), Rasco Klock Perez & Nieto, LLC, New York, New York.

FOR APPELLEE:               MARSHALL FISHMAN, Samuel Joseph Rubin (*on the brief*), Goodwin Proctor, LLP, New York, New York.

---

[*] Judge Paul G. Gardephe of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sweet, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

We assume the parties' familiarity with the facts, record of prior proceedings, and arguments on appeal, which we reference only as necessary to explain our decision to affirm.

### Background.

Plaintiffs-Appellants Eduardo and Gervasio Negrete (collectively, "the Negretes"), are brothers and Mexican citizens who maintain several bank accounts with Defendant-Appellee Citibank, N.A. and signed "International Swaps and Derivatives Association Master Agreements with Citibank to enable [them] to execute FX transactions through Citibank, among other transactions." First Amended Complaint ("FAC") FAC ¶ 6. Under these ISDA Agreements the Negretes executed thousands of transactions through Citibank, including pairing U.S. Dollars, Euros, Yen, Australian Dollars, Canadian Dollars, Great British Pounds, Mexican Pesos, and other currencies, amounting to roughly $15 billion traded per annum. As contemplated by the ISDA Agreements, the Negretes gave instructions for these transactions via telephone to the Latin American desk in Citibank's New York office. The 2010 ISDA Agreement, which was signed only be Gervasio Negrete, limited liability thereunder by stating that "[n]o party shall be required to pay or be liable to the other party for any consequential, indirect, or punitive damages, opportunity costs or lost profits" (the "limitation of liability provision"). J. App'x at 148 (2010 ISDA Agreement provision 5(g)).

2

The Negretes' trading mostly consisted of placing "limit" and "market" orders. "[W]ith respect to both types of trades, Citibank added an undisclosed markup to [the Negretes'] instructions without informing them and, in fact, at times, affirmatively lying to [the Negretes] that Citibank was adding such a markup." FAC ¶ 19.

On May 20, 2015, Citicorp, parent of Citibank, pled guilty to conspiring to rig bids in the FX spot market between December 2007 and January 2013, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. In the relevant plea agreement Citicorp admitted that:

> [T]hrough its currency traders and sales staff, [Citicorp] engaged in . . . currency trading and sales practices in conducting FX Spot Market transactions with customers via telephone, email, and/or electronic chat, to wit: (i) intentionally working customers' limit orders one or more levels, or "pips," away from the price confirmed with the customer; (ii) including sales markup, through the use of live hand signals or undisclosed prior internal arrangements or communications, to prices given to customers that communicated with sales staff on open phone lines; (iii) accepting limit orders from customers and then informing those customers that their orders could not be filled, in whole or in part, when in fact the defendant was able to fill the order but decided not to do so because the defendant expected it would be more profitable not to do so . . .

FAC ¶ 21.[1] Under the terms of the plea agreement, Citibank made a disclosure to its FX customers, including the Negretes. This was the first time the Negretes were aware that Citibank was adding an undisclosed markup to their transactions. The brothers shortly thereafter met with their banker at Citibank who "stated, in sum and substance, 'I feel very bad about lying to you two. I was ordered by my superiors at Citibank to add a markup to all of your orders. I was also instructed that I could not let you know about the markups. That is why, when you complained about orders not being filled, I had to come up with some

---

[1]     "[A] 'pip' is the smallest price move of a given exchange rate. As most currency pairs are priced to four decimal places, a pip is often approximately equal to one basis point." FAC ¶ 31.

excuses, without revealing the real reason your orders were not filled as instructed.'" FAC ¶ 28.

Citibank would also decline to execute FX trades on behalf of the Negretes where the market reached the threshold for a limit order they had placed. When the Negretes noticed such an occurrence, they would call Citibank to inquire, and this happened roughly 150 times. The individuals on the Latin American trading desk (named in the First Amended Complaint) specifically "assured [the Negretes], on each occasion, that Citibank was not adding markups to [their] trade instructions." FAC ¶ 60. In other instances, Citibank would partially fulfill an order to retain inventory at a more advantageous price to Citibank.[2]

"Citibank made substantial profit off of [the Negretes] separate and apart from the individual FX trades by extending margin loans to Plaintiffs to enable them to trade FX. The interest payments on these loans made by Citibank to [the Negretes] totaled hundreds of thousands of dollars." FAC ¶ 99.

The Negretes filed their original Complaint on September 16, 2015, alleging fraud, breach of the ISDA Agreements, and negligence, based on Citibank's undisclosed markups and allegedly erroneous margin calls. Citibank moved to dismiss the original Complaint, and the Negretes filed a cross-motion for partial summary judgment with respect to the breach of contract claim. On May 19, 2016, the district court dismissed the original Complaint in its

---

[2] There are allegations of a total of 35 specific instances of wrongdoing in the First Amended Complaint. These examples were included after the district court dismissed the original complaint for lack of specificity.

4

entirety with leave to amend, and denied the Negretes' cross-motion for partial summary judgment, finding that the Negretes had failed to plead fraud with sufficient particularity.

On June 20, 2016, the Negretes filed the FAC, which asserts six claims for relief: (1) fraud by omission for the undisclosed markups; (2) fraudulent misrepresentation regarding the undisclosed markups; (3) breach of the ISDA Agreements regarding the undisclosed markups; (4) breach of the ISDA Agreements regarding the erroneous calculation of the Negretes' collateral, and "making wrongful margin calls"; (6) breach of the covenant of good faith and fair dealing; and (5) fraud regarding the margin calls. FAC ¶¶ 149 – 82.

Citibank moved to dismiss the First Amended Complaint and the Negretes moved for partial summary judgment. On February 27, 2017, the district court denied the Negretes' motion and partially granted Citibank's motion. The district court held that the Negretes' claims for covering trades [at a later time] at a worse price than the contract price," were adequately pled to survive the motion to dismiss because they pled actual damages. The court dismissed all other claims. Sp. App'x at 86.

Citibank filed an answer to the remaining claim on March 13, 2017. The Negretes made a request for a final, appealable judgment under Federal Rule of Civil Procedure 54(b), that request was denied, and the Negretes voluntarily dismissed the remaining claim. This appeal followed.

## Discussion.

We review *de novo* the district court's decisions on both motions to dismiss and motions for summary judgment. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996); *Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011). In reviewing a district court's grant of a motion to

5

dismiss, this court "accept[s] as true the factual allegations made in the complaint and draw[s] all inferences in favor of the plaintiffs." *BPP Illinois, LLC v. Royal Bank of Scotland Group PLC*, 859 F.3d 188, 191 (2d Cir. 2017) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief plausible on its face.'" *Aschcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

I.      *The district court properly dismissed the Negretes' breach of contract claims.*

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (internal quotation marks omitted).

a.      *The claims for undisclosed markups do not allege a breach by Citibank.*

The Negretes' claims for breach of contract for undisclosed markups fail for the simple reason that they do not allege breach of contract. Nothing in the ISDA Agreements, or alleged to have occurred in the telephone conversations in which the Transactions were ordered prohibit Citibank's undisclosed markups.

The Negretes contend that they have adequately pled that the 35 contracts set out in the FAC required Citibank to give them the "best price" available on the market for their limit orders, and that Citibank failed to do so. The Negretes do not, however, cite any specific instance where they or any agent of theirs agreed with Citibank, as part of a completed contract under the ISDA Agreements, that Citibank would provide them with the "best price" in the market. Instead, the Negretes merely rely on the fact that they allegedly understood the

6

concept of a "limit order" to include an automatic assumption that they would be given the best price. But that allegation is not sufficient to allege a meeting of the minds sufficient to add a "best price" term to the oral FX trading contracts.

In the absence of any explicit agreement for Citibank to obtain the best price for the Negretes, the district court correctly ruled that the ISDA Agreements imposed no such obligation. The ISDA Agreements created an arms-length counterparty relationship between the Negretes and Citibank, with respect to which each party acted as a principal, rather than as a fiduciary of the other. Therefore, absent an explicit agreement to the contrary, Citibank had no fiduciary obligation to provide the Negretes with the best execution for their FX trades, because Citibank was not acting as the Negretes' broker or agent.

b. *The Negretes have not sufficiently alleged breach of contract with respect to the alleged erroneous margin calls.*

The district court held that the Negretes' "fail[ure] to use the required dispute resolution provision to contest margin calls under the [ISDA Agreements] . . . invalidates the claims of invalid margin calls," noting that such dispute resolution provisions have been held enforceable by courts within the Second Circuit. Sp. App'x at 35 (citing *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, No. 08 Civ. 1563 (BSJ), 2009 WL 311362, at *2 (S.D.N.Y. Jan. 29, 2009) (holding that a party's failure to invoke a dispute resolution provision precludes the party from later challenging its counterparty's "request for additional collateral without having first vetted [its] claim in the manner agreed upon in the . . . Contract.")). We agree. Even if the Negretes "complained" about certain margin calls that Citibank made, as they argue on appeal, the FAC does not allege that the Negretes complied with the dispute resolution procedure set forth in the ISDA Agreements. The Negretes' breach of contract

7

claims based on Citibank's allegedly erroneous margin calls claims were therefore properly dismissed by the district court as waived.

      *c.*    *The breach of covenant of good faith and fair dealing claims are duplicative of the breach of contract claims.*

The First Amended Complaint alleges that Citibank breached the covenant of good faith and fair dealing by taking and failing to disclose markups, FAC ¶ 165 (under Claim III), and erroneously calculating their collateral and making associated wrongful margin calls, FAC ¶ 174 (under Claim IV). The district court held that these claims were duplicative of the breach of contract claims and dismissed them. Sp. App'x at 91 (quoting *Harris v. Provident Life & Accident Ins.*, 310 F.3d 73, 81 (2d Cir. 2002) (explaining that an implied covenant claim "will not stand if it is duplicative of a breach of contract claim.")). These claims were properly dismissed for the reason stated by the district court. The Negretes argue on appeal that their breach of the covenant of good faith and fair dealing claims are for Citibank's "lying," but that assertion is not supported by the allegations in the First Amended Complaint. The claims for breach of the covenant are expressly based on the same facts underlying the breach of contract claims.

      *II.*      *The district court properly dismissed the Negretes' fraud claims.*

The elements of fraud under New York law are: "[1] a representation of material fact, [2] the falsity of that representation, [3] knowledge by the party who made the representation that it was false when made, [4] justifiable reliance by the plaintiff, and [5] resulting injury." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (internal quotation marks omitted); *accord Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006).

8

Claims for fraud must be pled with "particularity." Fed. R. Civ. P. 9(b). "That ordinarily requires a complaint alleging fraud to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. But the adequacy of particularized allegations under Rule 9(b) is . . . case- and context-specific." *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (ellipses in original, internal quotation marks omitted).

*a. The Negretes have not alleged fraud regarding the undisclosed markups.*

The First Amended Complaint alleges that Citibank committed fraud by failing to disclose hidden markups, and by making deliberate and affirmative misrepresentations regarding those hidden markups. Reasonable minds could differ as to whether the First Amended Complaint sufficiently alleges the first four elements of fraud regarding these claims or alleges those elements with the particularity required by Rule 9(b), but the fifth element, loss causation, or resulting injury, is clearly unsatisfied.

The district court correctly held, however, that the Negretes' claimed damages for fraud, based on Citibank's alleged misrepresentations about not charging markups, are all barred from recovery by New York's "out-of-pocket" rule, because "[t]he damages alleged here are precisely the profits [that the Negretes] would have made were it not for the allegedly fraudulent markup[s]." Sp. App'x at 77. And under New York's "out-of-pocket" rule, "there can be no recovery of profits which would have been realized in the absence of fraud" because "[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." *Lama Hldg. Co. v. Smith*

9

*Barney Inc.*, 88 N.Y.2d 413, 421 (1996). "[T]he rationale for the out-of-pocket loss rule [is] that losses based on 'a hypothetical lost bargain [are] too undeterminable and speculative to constitute a cognizable basis for damages.' A misrepresentation is tortious, therefore, only if it causes out-of-pocket losses. To hold otherwise would lead courts to award damages based solely on a 'speculative . . . allegation that [the plaintiff] was injured at all.'" *AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc.*, 661 F. App'x 2, 4 – 5 (2d Cir. 2016) (quoting *Starr Found. v. AIG, Inc.*, 76 A.D.3d 25, 28 (1st Dep't 2010)).

> b. *The district court properly dismissed the Negretes' claim for fraud for erroneous margin calls as duplicative of the breach of contract claim for margin calls.*

The district court dismissed the fraud claim for erroneous margin calls as duplicative of the breach of contract claims for margin calls. In so holding the district court relied on *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). In that case this court held that where a claim for fraud is based on facts underlying breach of contract, the "plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract . . . ; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . .; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc.*, 98 F.3d at 20.

The First Amended Complaint alleges that "*pursuant to the ISDA Agreements*, Citibank was responsible for calculating Plaintiffs' collateral for the purposes of determining when to make margin calls." J. App'x at 578, FAC ¶ 177 (emphasis added). The Negretes set forth no reasoned argument as to how misstatements of these calculations, which they alleged Citibank

was required to make under the contract between the parties, were not in fact germane to the contract and therefore not collateral or extraneous to it.

III.    *The motion for partial summary judgment was properly denied.*

The district court could not have granted partial summary judgment to the Negretes for liability on their breach of contract claims because the district court correctly found that the First Amended Complaint did not allege valid damages and the Negretes thus had failed to plead a breach of contract claim sufficient to survive the motion to dismiss.   *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 178 (2d Cir. 2012).

We have considered all the Negretes' arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the amended judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11